UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ANGELA S., | No. 1:23-2557 |
| Plaintiff, | |
| v. | OPINION |
| KILOLO KIJAKAZI, *Acting Commissioner of Social Security*, | |
| Defendant. | |

**APPEARANCES:**

Lauren S. Tovinsky
JACOBS SCHWABLE & PETRUZELLI PC
10 Melrose Avenue, Suite 340
Cherry Hill, NJ 08003

    *On behalf of Plaintiff*

Delores Montgomery
SOCIAL SECURITY ADMINISTRATION
Office Of Program Litigation, Office 3
6401 Security Boulevard
Baltimore, MD 21235

    *On behalf of Defendant*

**O'HEARN, District Judge.**

**I.    INTRODUCTION**

    This matter comes before the Court on Plaintiff Angela S.'s[1] appeal from a denial of Social Security Disability Insurance Benefits by the Acting Commissioner of Social Security

---

[1] Pursuant to this Court's Standing Order 2021-10, this Opinion will refer to Plaintiff solely by first name and last initial.

1

("Defendant"). The Court did not hear oral argument pursuant to Local Rule 78.1. For the reasons that follow, the Court affirms the Acting Commissioner's final decision.

## II. BACKGROUND

The Court will briefly discuss the administrative and procedural history as it is relevant to this appeal, but the following is not intended to be a comprehensive recitation.

### A. Administrative and Procedural History

On April 9, 2021, claimant protectively filed a Title II application for a period of disability and disability insurance benefits, alleging disability beginning March 31, 2021. (AR 205). Plaintiff's claim was denied on May 14, 2021 and again on reconsideration on October 13, 2021. (AR 117, 123). Plaintiff filed a Request for Hearing before an Administrative Law Judge ("ALJ"), which was held on April 6, 2022. (AR 70, 132). Plaintiff testified at the hearing. (AR 72). On April 19, 2022, the ALJ issued a decision finding Plaintiff was not disabled under the Social Security Act. (AR 43–69). Plaintiff filed a Request for Review by the Appeals Council, which was denied on April 13, 2023. (AR 1–7). Accordingly, the April 19, 2022 Decision became the Final Decision of the Commissioner. Plaintiff initiated this appeal on May 10, 2023. (ECF No. 1).

### B. Vocational Expert Testimony

Vocational Expert ("VE") Sherri Pruitt testified at the hearing on April 6, 2022. (AR 80). First, the VE testified that Plaintiff performed her past relevant work as a School Secretary, DOT Code 201.362-022, differently from how it is generally performed in the national economy. (AR 81). She testified that it is a sedentary job, and that Plaintiff performed it at the medium level with a Skill Level and Specific Vocational Preparation ("SVP") of 5. (AR 81).

Then, the ALJ presented Pruitt with a hypothetical individual of Plaintiff's age, education, and work experience with a Residual Functional Capacity ("RFC") to perform light work, and including occasionally climbing ramps and stairs, balance and stopping, kneeling and crouching; never climbing ladders, ropes, or scaffolds; no constant operation of foot controls bilaterally; frequent handling and fingering bilaterally; avoiding even moderate exposure to extreme temperatures, pulmonary irritants, and hazards; and avoiding concentrated exposure to wetness and humidity. (AR 81). The VE opined that this individual could perform Plaintiff's past relevant work as it is generally performed in the national economy, but not as it was performed by Plaintiff. (AR 81).

The ALJ next presented the VE with a second hypothetical individual of Plaintiff's age, education, and work experience with a RFC to perform sedentary work, and including the same limitations as posed in the first hypothetical. (AR 84). The ALJ asked if this hypothetical individual could perform Plaintiff's past relevant work. (AR 84). The VE again opined that it could be performed as generally performed, but not as performed by Plaintiff. (AR 84).

The ALJ further asked whether Plaintiff had transferrable skills from her past work. (AR 82). The VE opined that Plaintiff's transferable skills include "scheduling appointments, maintaining calendar and coordinating conferences and meetings, compiling and maintaining records, [and] ordering and distributing supplies." (AR 82).

Given that information, the ALJ asked if there are other jobs in the national economy that the hypothetical individual could perform with these transferrable skills "with little to no adjustment in terms of tools, work processes or work setting." (AR 82). The VE testified that Appointment Clerk, DOT Code 237.367-010, a sedentary job with an SVP of 3, and

Receptionist, DOT Code 237.367-038, a sedentary job with an SVP of 4, could be performed by someone with the transferrable skills of a School Secretary. (AR 85).

The ALJ asked if, given the individual in the second hypothetical, with the additional limitation of only occasionally handling and fingering bilaterally, there would be any jobs in the national economy the individual could perform. (AR 85–86). The VE stated that there would not. (AR 86).

The VE also testified that the typical tolerance employers have for off task behavior is up to and including 10%, and tolerance for absenteeism is one day per month. (AR 86).

### C. The ALJ's Decision

The ALJ's five-step sequential analysis concluded with a finding that Plaintiff was not disabled within the meaning of the Social Security Act. (AR 64); *see* C.F.R. § 404.1520. At Step One, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of March 31, 2021. (AR 48). At Step Two, the ALJ found Plaintiff's conditions of gout, diabetes mellitus, peripheral neuropathy, left knee osteoarthritis, and fibromyalgia to be severe impairments. (AR 48).

At Step Three, the ALJ found that Plaintiff's impairments did not meet or medically equal the severity of an impairment listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (AR 52). Before proceeding to Step Four, the ALJ determined that Plaintiff retained the RFC to perform

> sedentary work as defined in 20 CFR 404.1567(a) except: Occasionally climbing ramps and stairs, balancing, stooping, kneeling and crouching. Never climbing ladders, ropes or scaffolds or crawling. No constant operation of foot controls bilaterally. Frequently handling and fingering bilaterally. Avoiding even moderate exposure to extreme temperatures, pulmonary irritants, and hazards such as unprotected height and moving mechanical parts. Avoiding concentrated exposure to wetness and humidity

4

(AR 54). Based on the testimony of the VE, at Step Four the ALJ found that Plaintiff could perform past relevant work as a School Secretary. (AR 61). Thus, the ALJ concluded that Plaintiff was not disabled under the Social Security Act. (AR 63).

### III. LEGAL STANDARD

In reviewing determinations for Social Security disability benefits, this Court has the authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). In contrast, the Court reviews the ALJ's factual findings to determine if they are supported by "substantial evidence." *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000); *see also* 42 U.S.C. §§ 405(g), 1383(c)(3). "Substantial evidence" means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Cons. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)) (internal quotations omitted); *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999). Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)). The ALJ's decision thus must be set aside if it "did not take into account the entire record or failed to resolve an evidentiary conflict." *Schonewolf v. Callahan*, 972 F. Supp. 277, 284–85 (D.N.J. 1997) (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

The Social Security Act defines "disability" as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). The Act further states,

> [A]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has promulgated a five-step, sequential analysis for evaluating a claimant's disability, as outlined in 20 C.F.R. § 404.1520(a)(4)(i-v). The analysis proceeds as follows:

> At step one, the ALJ determines whether the claimant is performing "substantial gainful activity[.]" If he is, he is not disabled. Otherwise, the ALJ moves on to step two.
>
> At step two, the ALJ considers whether the claimant has any "severe medically determinable physical or mental impairment" that meets certain regulatory requirements. A "severe impairment" is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities[.]" If the claimant lacks such an impairment, he is not disabled. If he has such an impairment, the ALJ moves on to step three.
>
> At step three, the ALJ decides "whether the claimant's impairments meet or equal the requirements of an impairment listed in the regulations[.]" If the claimant's impairments do, he is disabled. If they do not, the ALJ moves on to step four.
>
> At step four, the ALJ assesses the claimant's "residual functional capacity" ("RFC") and whether he can perform his "past relevant work." A claimant's "[RFC] is the most [he] can still do despite [his] limitations." If the claimant can perform his past relevant work despite his limitations, he is not disabled. If he cannot, the ALJ moves on to step five.
>
> At step five, the ALJ examines whether the claimant "can make an adjustment to other work[,]" considering his "[RFC,] . . . age, education, and work experience[.]" That examination typically

> involves "one or more hypothetical questions posed by the ALJ to [a] vocational expert." If the claimant can make an adjustment to other work, he is not disabled. If he cannot, he is disabled.

*Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 201–02 (3d Cir. 2019) (alterations in original, citations and footnote omitted).

## IV. DISCUSSION

Plaintiff alleges two errors by the ALJ. First, Plaintiff alleges that the ALJ erred in formulating her RFC. (Pl. Br., ECF No. 5 at 11). Second, Plaintiff alleges that the ALJ failed to properly weigh Plaintiff's subjective statements. (Id. at 19). Plaintiff further argues that based on these errors, this Court should reverse the Commissioner's decision and award benefits without remanding the case for rehearing. (Id. at 23).

### A. RFC Determination

Plaintiff argues that the ALJ "failed to properly consider the impact of all of the Plaintiff's well-established impairments and limitations in formulating the RFC finding in violation of SSR 96-8p." (Pl. Br., ECF No. 5 at 15). Specifically, Plaintiff argues that the ALJ did not properly consider Plaintiff's narcolepsy and migraine headaches, in formulating the RFC. (Id. at 15–18). Although Plaintiff explains that the harmful error occurred in formulating the RFC, Plaintiff also asserts that the ALJ erred in determining that her narcolepsy and migraine headaches were nonsevere, and that "they should have been considered as severe impairments in formulating the RFC." (Pl. Reply, ECF No. 11 at 4). Plaintiff claims that in failing to properly consider her narcolepsy and migraines, the ALJ failed to include in the RFC determination her "limitations in maintaining mental persistence and pace, or deficits in concentration and memory, or even the time off task or absences from work that the Plaintiff would have as a result of the narcolepsy" as well as "difficult[y] concentrating, remembering, and maintaining appropriate pace" resulting from her migraines. (Pl. Br., ECF No. 5 at 17–18).

7

In addition, Plaintiff claims that the ALJ erred in "discounting the Plaintiff's nonsevere impairments on the basis that they were supported mainly by subjective and not objective evidence." (Id. at 18). The Commissioner responds that "the ALJ carefully considered evidence regarding Plaintiff's non-severe and severe impairments in the RFC evaluation including Plaintiff's subjective complaints, her activities of daily living, the objective medical evidence, her course of treatment and response to treatment, and the opinion evidence." (Def. Br., ECF No. 10 at 13).

This Court will first address the ALJ's consideration of limitations related to narcolepsy and migraine headaches in formulating the RFC. Then the Court will address the ALJ's consideration of Plaintiff's subjective statements.

With respect to her narcolepsy, Plaintiff claims that the Final Decision included a conclusory statement that her narcolepsy was considered, but that it included "no discussion of the Plaintiff's limitations in maintaining mental persistence and pace, or deficits in concentration and memory, or even the time off task or absences from work that the Plaintiff would have as a result of the narcolepsy." (Pl. Br., ECF No. 5 at 16–17). Plaintiff alleges that the error in failing to consider the limitations based on her narcolepsy in formulating the RFC is not harmless error, but rather, "[t]his error is harmful because any consideration whatsoever for these additional nonexertional limitations would have precluded her ability to perform skilled and semi-skilled work meaning, in light of her age, education, past work, and exertional limitations, a finding of disability would have resulted at Step 5." (Id. at 17).

Next, with respect to her migraine headaches, Plaintiff argues that "the record establishes migraine headaches that persisted at levels that support the Plaintiffs' claims of difficulty concentrating, remembering, and maintaining appropriate pace." (Pl. Br., ECF No. 5 at 17–18).

8

Plaintiff disputes the ALJ's finding that Plaintiff's migraines were not severe because "she did not have headaches at the time of her examinations." (Id. at 17). Plaintiff asserts that her "headaches, along with several of her other medically determinable impairments that the ALJ discarded as nonsevere, surpass the de minimis standard imposed at Step 2." (Id. at 18). She concludes that the associated limitations on maintaining attention, concentration, and pace "would have precluded the Plaintiff from performing skilled or semi-skilled work and, in turn, a finding of disability would have resulted at Step 5." (Id. at 17).

      The Commissioner responds that the ALJ specifically addressed Plaintiff's narcolepsy, pointing to her 38-year history of narcolepsy, including the period of time when she worked full time as a school secretary. (Def. Br., ECF No. 10 at 16). Moreover, with respect to both Plaintiff's narcolepsy and migraines, the Commissioner argues that "[p]ointing to specific evidence, [the ALJ] highlighted that Plaintiff had normal mental status examinations, including alert appearance and normal orientation, thought processes, memory, and concentration and that these findings did not support additional mental or off-task limitations." (Id.).

      Turning to the ALJ's Final Decision, in analyzing Plaintiff's severe impairments, the ALJ explained that "[w]hile the undersigned did not specifically name idiopathic hypersomnia/narcolepsy, arthralgia of hands, radiculopathy, or plantar fasciitis as impairments in this matter, the undersigned considered the alleged signs and symptoms of the same as the alleged signs and symptoms of the claimant's above-stated severe impairments in the sequential evaluation process, consistent with SSR 96-8p." (AR 49). Thus, while her narcolepsy was not determined to be a severe impairment, it was not wholly disregarded as Plaintiff alleges. Moreover, in the RFC discussion, the ALJ does indeed discuss Plaintiff's narcolepsy. (AR 58).

9

Thus, although the ALJ did not list narcolepsy as a severe impairment, the ALJ did consider its related symptoms and limitations in formulating the RFC.

In formulating the RFC, the ALJ assessed the limitations related to Plaintiff's narcolepsy, and noted that Plaintiff has had narcolepsy for "some time, even during the period when she and her husband were dating and during her work as a school secretary." (AR 58). The ALJ pointed to treatment notes that demonstrate that 38 years prior Plaintiff would fall asleep during phone conversations, and treatment notes that she would fall asleep at times other than night prior to the alleged onset date. (AR 58; AR 908 (reporting excessive fatigue in February 2016); AR 963 (reporting sleep issues in December 2011); AR 1260 (reporting "daytime sleepiness" and "decreased level of concentration" in August 2016 that were "noticeable for years"); AR 1287 (reporting severe fatigue in March 2016)). The ALJ explained that despite this, Plaintiff engaged in substantial gainful activity for "several years performing skilled work." (AR 58). The ALJ directly analyzed the effect of Plaintiff's narcolepsy on her ability to work, pointing to specific treatment notes in support of her conclusion that it did not interfere with her ability to engage in substantial gainful activity in the past. Therefore, the ALJ's findings related to Plaintiff's narcolepsy are supported by substantial evidence.

In determining that the migraines were nonsevere, the ALJ considered Plaintiff's migraine headaches as presented in the record and concluded that "[a]s to migraine/headache/headache syndromes, despite the same, the record fails to document examination findings of deficits in terms of alertness or orientation, or an aggressive course of treatment for this condition." (AR 51). This statement demonstrates that the ALJ did consider the effects of the migraine headaches, discussing the lack of records related to issues with alertness or orientation. Review of the record reveals a series of medical records after the alleged onset

date that represent Plaintiff's mental status as "alert." (AR 527, 999, 1040, 1413, 1435). In addition, while Plaintiff argues here that the ALJ improperly dismissed the migraine headaches by basing her conclusion on the fact that Plaintiff only had a headache at the time of one examination, in the Final Decision the ALJ presented an extensive review of the record, pointing to multiple examinations from 2010 through 2021 where headaches were reported, and noting that her headaches were sporadic and that there was only one report since the alleged onset date. (AR 51). In this review, the ALJ further pointed to extensive medical records where Plaintiff denied having a headache. (AR 51). While Plaintiff argues that "the fact that the Plaintiff does not have a headache *at the very time of examination* does not mean that she did not have a headache multiple times per week when she was not physically present at a doctor's appointment" (Pl. Br., ECF No. 5 at 17) (emphasis in original), she does not point to any records that substantiate her claim that she experienced headaches that in fact occurred outside of appointments. Of course, it is possible that Plaintiff suffered from migraines that are not reflected in the medical records, and the ALJ could have credited Plaintiff's testimony as to the severity and frequency of her migraines. However, it is not this Court's role on appeal to question the credibility determination made by the ALJ or reweigh the evidence as to this issue. *Torres v. Comm'r of Soc. Sec.*, No. 17-00843, 2018 WL 1251630, at *8 (D.N.J. Mar. 12, 2018) (quoting *Coleman v. Comm'n of Social Sec.*, 494 F. App'x. 252, 254 (3d Cir. 2012)) ("the Third Circuit has instructed that it 'ordinarily defer[s] to an ALJ's credibility determination because he or she has the opportunity at a hearing to assess a witness's demeanor.'"). Further, despite finding that Plaintiff's migraines did not present a severe impairment, and that "the record fails to document examination findings of deficits in terms of alertness or orientation, or an aggressive course of

treatment for this condition" (AR 51), the ALJ nevertheless considered the alleged symptoms in assessing the RFC. (AR 59–60).

Contrary to Plaintiff's argument that the ALJ did not discuss the effects of her narcolepsy and migraines on her ability to stay on task, her alertness, orientation, thought processes, memory, and concentration, the ALJ directly addressed these factors, and pointed to support in the record that demonstrates a lack of abnormal mental status findings. (AR 59–60). Specifically, the ALJ explained that:

> The undersigned additionally notes, the record does not support the assessment of any mental or off-task limitations. For example, despite symptoms (including, but not limited to, pain, fatigue/sleepiness/idiopathic hypersomnia/narcolepsy, brain/fibromyalgia fog, and headaches/migraines), alleged medication side effects, potential gout flares, and the waxing and waning of fibromyalgia symptoms, the record fails to document abnormal mental status examination findings (including, but not limited to, as to alertness, orientation, thought processes, memory or concentration) (Exhibits 1F-23F). Nonetheless, the undersigned accounted for potential danger secondary to symptoms, alleged medication side effects, potential gout flares, and the waxing and waning of fibromyalgia symptoms upon exposure to hazards when assessing the above-stated hazards exposure limitation.

(AR 59). Although Plaintiff points to medical records that include reports of fatigue, drowsiness, and falling asleep, a review of the records that the ALJ relies upon in reaching the conclusion that the record does not support abnormal mental status findings confirms that the ALJ's findings related to Plaintiff's narcolepsy and migraines are supported by substantial evidence, this includes records from before the alleged onset date, and the record includes multiple records that indicate normal mental status findings. (*See, e.g.,* AR 527, 695, 697, 704–05, 713–14, 999, 1040, 1413, 1435). Thus, the ALJ's consideration of narcolepsy and migraine limitations in formulating the RFC is supported by substantial evidence.

This Court will next address Plaintiff's argument that the ALJ improperly discredited Plaintiff's nonsevere impairments because they were supported "mainly by subjective" evidence. (Pl. Br., ECF No. 5 at 18). Plaintiff claims that this is inconsistent with the ALJ relying on subjective finding to discount opinions of State Agency consultants. (Id. at 18–19). Plaintiff states that this alleged inconsistency "further demonstrates the ALJ's efforts to inconsistently and arbitrarily cherry-pick evidence." (Id. at 19).

The Commissioner responds that the ALJ did consider Plaintiff's subjective complaints earlier in the decision and that "[w]ithin the RFC discussion, the ALJ explained that while Plaintiff's medically determinable impairments could reasonably cause her alleged symptoms, the medical evidence and other evidence did not support the alleged intensity, persistence, and limiting effects of her symptoms." (Def. Br., ECF No. 10 at 14). The Commissioner explains that the ALJ then also considered "Plaintiff's course of treatment and objective findings," "Plaintiff's objective clinical signs," and medical opinions. (Id. at 15–16).

In formulating the RFC, the ALJ engaged in an extensive analysis of the medical records. In assessing the subjective evidence throughout the record, the ALJ compared the subjective evidence to objective examination evidence, course of treatment, and Plaintiff's actions and admissions. (AR 55–61). The ALJ weighed this evidence, and determined that "the extent of the claimant's alleged limitations is not entirely consistent with the record." (AR 55). Again, so long as the ALJ considered all of the relevant evidence and there is substantial evidence to support the ALJ's conclusion, it is not this Court's role to engage in a reweighing of the evidence. *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011) ("Courts are not permitted to re-weigh the evidence or impose their own factual determinations.").

In addition, the ALJ did not discount the State Agency consultants because their findings were based on subjective evidence. With respect to the first opinion that the ALJ did not find persuasive, related to Plaintiff's exertional level, the ALJ pointed to both subjective evidence as well as objective evidence of treatment in the record and determined that "the record reveals that the claimant was more limited than opined as to exertional level." (AR 60). The ALJ found that the opinions from Dr. Brian George, M.D. and Catherine Harrison, R.D., C.D.C.E.S. were not persuasive as they were both "vague and fail[ed] to set forth specific functional limitations." (AR 60–61). Accordingly, the ALJ did not treat subjective evidence differently in determining whether to credit Plaintiff's claims and whether to credit medical opinions. Rather, the ALJ's analysis on both fronts was supported by substantial evidence in the record.

### B. Plaintiff's Statements

Plaintiff argues that the ALJ came to the finding that Plaintiff could perform work above the light or sedentary exertion level by cherry-picking which of Plaintiff's statements to consider, "crediting those indicative of greater function and discrediting those supportive of disability." (Pl. Br., ECF No. 5 at 22). Plaintiff disputes the ALJ's finding that Plaintiff's "activities of daily living were inconsistent with disability," arguing that none of the activities listed in the Final Decision require more than light or sedentary exertion. (Id. at 21). This includes, going to the food store, preparing simple meals like cold-cut sandwiches, and using a phone to set reminders. (Id.). Specifically, Plaintiff argues that the ALJ erred in finding that Plaintiff did not have the limitations with respect to attention, focus, and memory to which she testified. (Id. at 22). The ALJ based this on Plaintiff's report that she did not need reminders to go places or take care of personal needs, despite Plaintiff also stating that she did need reminders to take her medications.

(Id.). Plaintiff explains that a finding that Plaintiff is limited to unskilled work at the light or sedentary level would have resulted in a finding of disability. (Id.).

Plaintiff also argues that the ALJ should have credited her "reports of deficits in attention, concentration, memory, etc." (Id. at 23). Plaintiff asserts that this "demonstrates the ALJ's failure to consider not only the Plaintiff's statements, but also the medical record when read as a whole." (Id.).

The Commissioner responds that "[c]ontrary to Plaintiff's assertions, the ALJ considered the 'entire record' and discussed evidence regarding her symptoms and limitations." (ECF No. 10 at 20) (citation omitted). In addition, "the ALJ discussed Plaintiff's subjective complaints of pain, fatigue, and decreased mental functioning and explained why this evidence, when considered in light of a 'broad range of normal' objective findings and conservative course of treatment, did not support Plaintiff's extensive subjective complaints." (ECF No. 10 at 20) (citation omitted).

This Court first notes that while Plaintiff argues that "the ALJ spent much of the Decision discounting the Plaintiff's nonsevere impairments on the basis that they were supported mainly by subjective and not objective evidence," the ALJ did not rely solely on evidence based upon the mere distinction between subjective and objective evidence. (Pl. Reply, ECF No. 11 at 4). Rather, the ALJ considered how often certain symptoms were documented, whether findings were consistent in multiple reports, and an assessment of treatments. Moreover, this Court cannot thoroughly assess such a nonspecific complaint. Thus, the Court will assess the specific limitations that Plaintiff alleges were discounted based on subjective evidence.

First, with respect to limitations on attention, focus, and concentration, the ALJ did not make her conclusion based only on Plaintiff's report that she did not need reminders for certain

tasks. The ALJ pointed to examination findings in Exhibits 1F through 23F in support of her finding that "the record does not support the assessment of any mental or off-task limitation." (AR 59). These records support that finding, as the assessments of Plaintiff's neurological condition after the alleged onset date, including records from May 13, 2021; July 1, 2021; July 7, 2021; November 16, 2021; and December 14, 2021, report that she was alert (AR 527, 999, 1040, 1413, 1435); no dizziness and no vertigo (AR 695, 704, 713); "no lightheadedness, no fainting, no memory lapses or loss, no motor disturbances, and no sensory disturbances" (AR 695), no disorientation (AR 697), "[o]riented to time, place, and person" (AR 697, 705, 714); and "Memory was Unimpaired" (AR 697). Therefore, the ALJ's finding with respect to limitations related to concentration are supported by substantial evidence.

Further, the ALJ did not err in assessing that Plaintiff's "actions and admissions reveal that she is not as limited as she alleged," taking into consideration Plaintiff's report of "being able to manage finances, not requiring reminders to go places or take care of personal needs, having no problems dealing with others, getting along fine with authority figures, and never losing a job due to problems dealing with others." (AR 58). The ALJ crediting one statement over another does not demonstrate that she failed to consider both statements, and this Court must defer to the ALJ's credibility determinations. *Zirnsak v. Colvin*, 777 F.3d 607, 612 (3d Cir. 2014) ("the ALJ must necessarily make certain credibility determinations, and this Court defers to the ALJ's assessment of credibility"). Plaintiff asks this Court to re-weigh her statements. As explained above, this is not the Court's role.

Plaintiff finally argues that even the activities of daily living that the ALJ relied on "are in no way inconsistent with a finding of disability." (Pl. Br., ECF No. 5 at 21–22). She states that "**none** of the activities cited require more than light or sedentary exertion." (Id. at 21) (emphasis

16

in original). Even accepting that argument as true, it would not change the RFC formulation, where the ALJ here concluded that Plaintiff is able to perform sedentary work.

## V.       CONCLUSION

For the foregoing reasons, the Court affirms the Acting Commissioner's Final Decision.[2]

An appropriate Order accompanies this Opinion.

Date: April 16, 2024  
At Camden, New Jersey

/s/ Christine P. O'Hearn  
**Christine P. O'Hearn**  
**United States District Judge**

---

[2] Plaintiff asks the Court to forgo remand and instead issue an award of benefits. (Pl. Br., ECF No. 5 at 23–24). Plaintiff asks, in the alternative, for a remand. (Id. at 25). Because this Court affirms the Final Decision, it need not assess Plaintiff's argument as to remedy.